Good morning, Illinois Appellate Court, 1st District. Court is now in session. The Fourth Division, the Honorable Justice Robert E. Gordon presiding, case number 1-8-1726, People v. Kendall-Robertson. Would the lawyers who are going to argue the case please introduce yourself to the court. Good morning, Your Honors. Chris Bendick from the State Appellate Defender's Office for Appellant Kendall-Robertson. Assistant State's Attorney Andrew Iasson. The appellant, are you going to reserve some time for rebuttal? Yes, Your Honor. A few minutes in rebuttal, if that's fine. That'd be fine. Okay, let's proceed. May it please the court. Good morning, Your Honors. Counsel, my name is Chris Bendick from the Office of the State Appellate Defender, and I represent the appellant Kendall-Robertson. My intention is to address each of the sentencing issues, starting with the juvenile sentencing provision claim. Despite being the least culpable of the three charged defendants, 17-year-old Kendall-Robertson is serving a de facto life sentence or a sentence one day short of de facto life, where the sentencing judge failed to consider all of the required mitigating factors of the juvenile sentencing provision and how they applied to Kendall. A new sentencing hearing should occur for the trial court to comply with the statute. And even if this court concludes the trial court complied with the statute, this court should still remand the case for a new sentencing hearing or reduce Kendall's sentence where his rights under the United States and Illinois constitutions were violated. Because Kendall- I have a question regarding the sentencing statute that was applied here. Yes. In people versus gun, the facts there were somewhat similar to what was occurring here in terms of it was a sentence that was 40 years or less, and that court in interpreting buffer and looking at the statute indicated that the statute wasn't applicable because the offense was committed prior to the statute being enacted or amended, I should say. So isn't it the same situation here because this happened in 2014 and the statute didn't come into existence till after that? Your honor, this court has routinely applied 105A for cases where the sentencing occurred after the effective date of the act. Okay. Well, how do you coincide that with people versus gun that indicated that because the statute wasn't enacted till after the offense, the statute wasn't applicable? Your honor, I ask you to turn to Vada Minuik, which is the same situation that the offense occurred prior to the effective date, but the sentencing occurred afterwards. And it's always been the law of this court, as well as second district appellate court, that that statute 105A applies. And I believe in gun, I'd have to take a look at gun again, but I believe gun did. I'll take a look at the facts again of gun as to 105A, but my understanding is that 105A has always been applied for sentencing that occurred after the effective date of that act. Let me ask you this. How about the United States Supreme Court case of Jones versus Mississippi? Is that in any way affect this case? No, your honor. And thank you for asking about Jones. The Supreme Court's holding in Jones is narrowly tailored and merely allows for a juvenile to be sentenced to life in prison absent of finding of incorrigibility, a specific finding. Jones simply does not apply in this case because the record is clear. The trial court was not finding Kendall incorrigible or irretrievably depraved. And Jones affirms Miller and Montgomery and that states are free to enact provisions just like Illinois did in section 105A. Quote, the states, not the federal courts, make those broad moral and policy judgments in the first instance when enacting their sentencing laws and state sentencing judges and juries then determine the proper sentence in individual cases in light of the facts and circumstances of the offense and the background of the offender. Our holding today does not preclude the states from imposing additional sentencing limits in cases involving defendants under 18 convicted of murder. States may category prohibit life without parole for those offenders, or they may require sentencers to make extra factual findings before sentencing an offender under 18 to life without parole. So your honor, Jones, oh I'm sorry your honor. Well this was a discretionary sentence, would you agree? Yes your honor. And Jones was a discretionary sentence? Of mandatory national life, yes. And the United States Supreme Court carved out two exceptions. This case doesn't fall within those exceptions, does it? Jones says exactly what happened in this case and in the state of Illinois. The state of Illinois has enacted specific legislation that requires these eight enumerated factors plus the ninth catch-all factor that have to be considered and applied by the sentencing judge for any juvenile that is sentenced now after the effective date of the act. Whether that is a natural, a de facto life sentence, a life sentence, or something less than that. So Jones simply does not change the outcome here one bit. Turning back to the statute on 105A your honors, because Kendall was 17 at the time of the offense and because he was sentenced after the relevant statute became effective, the trial court was required to consider those factors. And that applies whether this court finds Kendall's sentence of 40 years to be de facto life or not. That's people be Murphy said that. And Kendall and the state concur that the trial court did not explicitly state it was considering in mitigation at least five of the subsection 105A factors. In seeking affirmance of Kendall's imprisonment until he is nearly 60 years old, the state heavily relies upon the trial court statement that was considering all factors in aggravation and mitigation as well as the contents of the PSI report. But such a blanket boilerplate statement does not render the trial court's actions here compliant with subsection 105A. People v. Vadim Anuik governs the outcome here. The facts there were that Vadim Anuik and his co-defendant entered the victim's car and shot him in the head. Vadim Anuik and another co-defendant helped dispose of the body. After being found guilty, Vadim Anuik at sentencing presented a wealth of mitigating evidence, a mitigation specialist testimony, that specialist mitigation report, testimony from his parents, the PSI report, and the juvenile statement in allocution. On appeal, Vadim Anuik argued that the sentencing judge failed to comply with subsection 105A. And much like in Kendall's case, the state and Vadim Anuik argued that the record showed the trial court properly considered all of the relevant sentencing factors, including defendant's youth and its attendant circumstances. The appellate court's second district rejected the state's argument. Specifically, the court there held the trial court's announcement that it was considering several factors, including the underlying facts of the case. The PSI report, the aggravating and mitigating factors, the mitigation report, the sentencing testimony, and the arguments of counsel did not mean the trial court complied with section 105A. Although the court provided a cursory mention of the Miller factors and subsection 105A, the sentencing judge provided little explanation as to how it applied them to defendant's particular circumstances. Remanding for a new... Well, does the trial court have to do that? Yes, your honor. For subsection 105A, it is our position, and it's the position of Vadim Anuik as well, that the court has to consider and apply these factors to all juveniles, whether it's a life sentence or it's something less. How do you know that the court did not do that here? Because here, the court did not explicitly state it was applying those factors, and the state has conceded that fact in its brief. And in Vadim Anuik, the court stated in remanding for this new 105A compliant hearing, it advised the trial court to, quote, make a more thorough record of how it weighs each of the relevant factors evaluating the defendant's youth and its attendance circumstances. And I... Is that enough for us to reverse? Yes, your honor. And I'd like to... And what case supports that? Vadim Anuik. And in the state's brief, it heavily relies upon this position. There, the Villa-Lobos court held the record showed the trial court there, quote, did carefully and explicitly consider, end quote, the 105A factors. That's in paragraph 74 of that decision. Further, the record corroborated this court's holding because there, the trial court reduced Villa-Lobos's sentence from 50 years to 40 years. The state's alternative argument is that the trial court's decision via subsection 105B here not to impose the mandatory firearm add-on somehow shows compliance with 105A. However, 105B only applies based on age. 105B only applies based on age. 105A, there needs to be an explicit showing of consideration in applying those specific factors to the defendant there. Finally, the state claims that even if a sentencing error occurred here, it does not rise to the level of counsel. But contrary to the state's position, Kendall has made the requisite showing under both prongs of plain error, as well as demonstrated sufficient prejudice from counsel's deficient performance. Whether via plain error or ineffective assistance of counsel, this court should excuse the forfeiture and remand the case for a resentencing because the trial court failed to consider and apply all of the statutorily mandated factors of 105A. But even if this concludes subsection 105A was complied with, this court should still remand the case for a new sentencing hearing or reduce Kendall's sentence where his rights were violated under the United States and Illinois constitutions. Starting with the Eighth Amendment claim, and as this court recently stated in De Corpo, a juvenile defendant may not be sentenced to life or de facto life imprisonment, or may be sentenced to that, but before doing so, the trial court must determine the defendant's conduct showed irretrievable depravity, permanent incorrigibility, and irreparable corruption beyond the possibility of rehabilitation. And from the trial court's comments during the sentencing hearing, it is clear, and the state has made no argument otherwise, that the trial court did not intend to sentence Kendall to life in prison. But that's unfortunately what occurred here when the court sentenced Kendall to 40 total years, which occurred before the buffer court announced that number as the line for de facto life. We do recognize this court in Villa-Lobos and Gunn have concluded that buffer held that 40 years is not a de facto life sentence. However, this court in People v. House stated that in buffer, quote, the Supreme Court concluded that a prison term of 40 years is long enough to be considered a de facto natural life sentence. Similarly, in People v. Ruiz held that a 40-year sentence qualified that defendant for protections of Miller. At a minimum, the rule of lenity should prevail, and this court should find the 40-year sentence here as a de facto life one. Moving on to the proportionate penalties and excessive sentence arguments, the state incorrectly argues that the proportionate penalties clause is only coextensive with the Eighth Amendment. As this court stated in Minifield, the purpose of the proportionate penalties clause is to add a limitation on the penalties beyond those provided by the Eighth Amendment, and to add the objective of restoring the offender to useful citizenship. Given Kendall's minimal participation in the crimes, his lack of a prior criminal background, and the vast amount of mitigating evidence, a four-decade prison sentence, which this court finds is not a de facto life term, then it is only one day short of life, shocks the moral conscience of our community. Similarly, this court's sentence here was excessive for many of the same reasons. In People v. Zachary Brown, this court reduced a juvenile's excessive sentence from 50 years to 31, even though the trial court there, quote, noted that it considered the pre-sentence investigation report, defendant's youth, family support, and education. In Benard-McKinley, this court reduced a 39-year sentence to 25 years, even though that defendant was the principal shooter in that case. As that court noted in McKinley, a sentence at or near the de facto lifeline for a juvenile, quote, indicates the trial court failed to give proper weight to the juvenile defendant's rehabilitation potential. In fact, counsel is unaware, and the state has cited no case, in a post-Miller buffer world, where a reviewing court has affirmed a 40-year term in prison for a juvenile who was merely accountable for the principal's actions. In Villa-Lobos and Gunn, where this court did affirm a 40-year sentence for juveniles, the juveniles in those cases were the principal. In Villa-Lobos, the defendant shot the victim, then returned to the scene of the incident and finished the job on a prone victim, shooting him in the back. In Gunn, the 17-year-old chased with, along with a co-defendant, chased down the victim who was unarmed and executed him. No constitutional purpose is being served by requiring Kendall to be in prison for 14 years more than the minimum allowed under the law. With the minimum allowed sentence, Kendall will still be in prison until 2040, when he will be 43 years old. Given the facts of this case, a 26-year term in prison is sufficient and just. If there are no further questions from your honors, Kendall. Is there any further questions for the panel? I don't have any. I would just say this is a very sad case. And that is, we absolutely agree with that sentiment, your honor. Let's hear from the state. Kendall Roberson asked this court to vacate his sentence and remand the case for a new sentencing hearing. Alternatively, asked this court to reduce his sentence to the minimum of 26 years in prison and reserve our remainder of our time in rebuttal. And thank you, your honors. Good morning, your honors. Assistant States Attorney Andrew Yasson on behalf of the people and good morning, counsel. Both of defendants' claims of error are forfeited, as we argued in our brief, because he didn't both object at sentencing and include them in a post-trial motion. Defendant first argues that this court should consider issue one as plain error under both the closely balanced prong and the substantial right to a fair trial prong. However, defendant can't establish that there was any error at all and thus can't show that there was plain error. Defendant argues that the trial court was required to consider the nine factors of 105A, but that it didn't. However, defendant fails to overcome the presumption that the trial court has considered all the relevant factors in mitigation before it and presents no affirmative evidence that the trial court failed to consider the factors of 105A. The most important evidence showing that the trial court did consider those nine factors, which is that counsel went over eight out of nine of them, is completely omitted from defendant's opening brief. All defendant states in his brief in that regard is in the statement of facts where he says, in mitigation and in asking for the minimum sentence of 26 years in prison, counsel mentioned 730 ILCS 5-5-4.5-105 and the concept of de facto life sentences. Defense counsel did a lot more than just mention 105A. Trial counsel specifically delineated and went over each of the first eight out of nine factors throughout six pages of transcript. The only factor defense counsel didn't mention during mitigation is a catch-all ninth factor, which allows the trial court to consider any other information it finds relevant in sentencing a defendant, including the defendant's expression of remorse, which is something this defendant didn't express in this case. It is presumed that a trial court has considered all of the relevant factors in mitigation before offers no affirmative evidence that the trial court failed to consider the factors in mitigation of 105A. Additionally, not only is there no affirmative evidence that the trial court failed to consider those nine factors, but to the contrary, there's affirmative evidence that the trial court did consider them. In its ruling, which itself was six pages of the transcript, the trial court twice stated that it considered all factors in aggravation and mitigation and made specific statements evincing that it considered the defendant's age, which was part of factor one, his family background, which was factor three, the circumstances of the offense, which was factor five, his level of participation in the specific role in the offense, which was factor six, his criminal history, which was factor eight, and other information the court found relevant and reliable, including the fact that defendant was in high school and there were varying levels of culpability with this defendant being the least culpable of the three offenders, which was factor nine. So at most, defendant could only argue that the trial court didn't specifically mention whether it considered three factors and part of one factor. The trial court specifically didn't put on the record that it considered defendant's impetuosity and level of maturity, whether he was subjected to outside pressure, his potential for rehabilitation, and whether he was able to meaningfully participate in his defense. But just because the trial court didn't specifically mention those factors in its ruling doesn't mean that it didn't consider them. Contrary to defendant's argument that the trial court is required to address each and every factor included in 105A, this court in Villa-Lobos held the trial court is not required to articulate each and every factor that it considers in rendering a sentence. Defendant cites Vatimaniac in his reply brief to support his position that the trial court is required to state on the record that it considered each of the factors of 105A. However, defendant misstates the ruling in Vatimaniac. In that case, a 17-year-old was sentenced to de facto life sentence of 54 years. The second district remanded for resentencing because the court didn't consider whether he was among the rarest of juvenile offenders whose crimes reflect permanent incorrigibility. The holding in Vatimaniac was absolutely not based on the trial court's failure to consider the factors of 105A. Defendant in his reply brief omits all the language of Vatimaniac that relates to the trial court's failure to evaluate whether the defendant was among the rarest of juvenile offenders whose crimes reflect permanent incorrigibility, which the court repeatedly stated was the basis of its holding. Defendant makes no attempt to actually distinguish Villa-Lobos, which is a first district case that is directly on point. All he argues is that the court's conclusion, all he argues is this court's conclusion that the trial court did carefully and explicitly consider the 105A factors. But he conveniently ignores the defendant's, I'm stated the trial court is not required to articulate each and every factor that it considers in rendering a sentence. However, that does not mean that it did not take all the important and relevant factors into account, which is what happened here. Thus because defendant can't show there was any error at all, he can't show that there was plain error. But even assuming that it was error for this court not to articulate each and every factor of 105A, the evidence of sentencing was not closely balanced. This defendant and his co-defendants all discussed a plan to rob and kill the victim over the course of several weeks. In defendant's own words, he agreed to the plan because he was money hungry. He was fully aware that William intended to murder John and kill anyone else that was with John and the one, and he was the one, this defendant that placed the call to John to lure him into the trap. Once they got to the abandoned house, William shot John in the back of the head and then shot Najee in the face and the wrist, attempting to kill her. John didn't die right away. He was still moving when officer Brown arrived on scene and had blood pouring out of his mouth. Fortunately, Najee survived and she had to have surgeries on her wrist and stitches to her face. The trial court described the violence in this case as the most unspeakable violence I have ever bared witness to and stated that the facts of this case just take your breath away. The violence, how suddenly it occurred, it's truly shocking. Additionally, while this case was pending, defendant picked up two cases of public indecency while at Cook Jail, both of which he pled guilty to and received 364 days. The evidence and mitigation didn't closely balance the completely unnecessary and violent nature of this crime, nor did it demand the minimum sentence. And we can't forget here that there were two victims in this case, not just one. There was one murder victim and one attempt murder victim. Defendant also can't satisfy his burden under the second prong of plain error to show that the error was so egregious as to deny him a fair sentencing hearing. As already argued at worst, the trial court failed to put on the record that it considered defendant's impetuosity and level maturity at the time of the offense, whether he was subjected to outside pressure, his potential for rehabilitation, and whether he was meaningfully able to participate in his defense. But the rest of the court's comments indicated that it imposed the aggregate 40-year sentence because of the nature of the crime and took into consideration all relevant factors in aggravation and mitigation. Thus, this defendant can't show that any potential error that occurred was so egregious that he was denied a fair sentencing hearing, where it can't be said that the result of the sentencing hearing would have been different had the trial court specifically stated on the record that it did consider each and every factor contained in 105A. And for the same reasons defendant can't show he was prejudiced under plain error analysis, he also can't show he was prejudiced under his ineffective assistance of counsel claim. He next argues that his discretionary 40-year sentence is an unconstitutional de facto life sentence. Again, this issue was also forfeited because he didn't both objective sentencing and include the issue in a post-trial motion. And again, there's no error because a 40-year sentence is not a de facto life sentence. This issue has been repeatedly resolved against defendant's position in People v. Gunn, People v. Villalobos, and most recently in this court's decision in People v. Benford. There in Benford, this court specifically held that buffer could not be more clear. The court stated, we hereby conclude that a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a de facto life sentence in violation of the Eighth Amendment. At exactly 40 years, the defendant's sentence does not constitute a de facto life sentence. Defendant's reliance on Ruiz is misplaced because the defendant there was which is not a de facto life sentence and a 40-year sentence imposed on an adult, which it found would be. Defendant next argues that a sentence violates the proportionate penalties clause, but he's failed to establish that as applied to him, his sentence shocks the moral sense of the community. This is especially true where the trial court declined to impose the firearm enhancements it could have imposed on both of his counts, thereby increasing his sentence by 30 more years. Considering defendant was found guilty of both first degree murder and attempt and still received a total aggregate sentence of only 14 years above the minimum and 80 years below the maximum, his sentence does not shock the moral sense of the community. That's especially true where he admitted to planning the murder because he was money hungry. Defendant was going to receive a lengthy sentence for his involvement in an attempt to murder, and it's important, as I already stated, to remember there were two victims in this case, not just one. And for those same reasons, the defendant's argument that his sentence is for all those reasons, we're asking that this court affirm the defendant's aggregate 40 year sentence. So I have a question. So the defendant here seems to imply that people versus gun is inapplicable here. Should we follow people versus gun in this case? With regards to the people versus guns decision as to what constitutes a de facto life sentence and what doesn't, absolutely. Absolutely. A 40 year sentence was specifically stated in gun that a 40 year sentence does not constitute a de facto life sentence. I have no questions. No further questions. Okay, then let's hear the rebuttal. But before you start, I have a question on rebuttal. Your constitutional violation, would that be an as applied here? Mr. Bendick? In regards to the proportionate penalties challenge, Your Honor? Yeah. Yes. Okay. In turning to the state's arguments that Vada Minuik is inapplicable here, simply because in that case, the defendant had a clear de facto life sentence. Vada Minuik could not be more clear that it was basing it based on the fact that the court there did not consider the 105A factors, which, of course, are the Miller factors. And that's in paragraph 98. It's explicit that it was the Miller factors that are codified in 105A that were not considered. It's also in paragraph 102 of that decision and paragraph 105 and paragraph 110. So the state is wrong on that aspect that the court's holding was not based on the 105A factors. It was also based on the lack of a finding of permanent corrigibility as well. But part of the court's holding of Vada Minuik was that because the 105A factors were not properly considered, despite trial counsel presenting a vast amount of mitigating evidence, there still was a remand for a new sentencing hearing for the court to make explicit its findings on 105A. And that's what this court should do here. It should remand this case, because whether this is a de facto life sentence or a de facto minus one day, if we're going to sentence a juvenile to 40 years in prison, we should make sure that the statute was complied with. Regarding the state's plain discussion, the evidence here at the sentencing hearing was, of course, closely balanced. Kendall had no prior juvenile adjudications or adult convictions. The circumstances surrounding the offense show the hallmarks of a juvenile being caught up in the pressure from an adult defendant, defendants, I should say, imposing their will upon him to engage in criminal acts. Further, Kendall's immediate reaction and statements to his brother and girlfriend indicated remorse. In short, the mitigating evidence presented at the sentencing hearing was substantial and qualifies as closely balanced under the first prong. As for the second prong, People v. Burge, the Illinois Supreme Court just recently reaffirmed the sentencing errors qualify under the second prong, substantial rights prong. Further, the state doesn't argue that trial counsel didn't perform deficiently and merely focuses on the lack of prejudice, as discussed in our closely balanced analysis. Those two are very similar, so whether it's via ineffective assistance or plain error under either prong, we ask for a remand for resentencing on 105A. Your Honor, to answer your question regarding Gunn as to whether the effective date, I just took a look at Vadim Inouye and Bill Olobos. Both of those cases involved offenses occurring before the effective date of the act and sentencing occurred after the effective date. There was no discussion in either of those cases as to whether it was improper to have those factors applied. Specifically, this court has repeatedly held under 105B that it is effective as of the date of sentencing, not the date of offense. Your Honors, have no further questions? None. Is there any further questions by any members of the panel? No. We ask that Kendall, who has a vast amount of mitigating evidence, strong family support, you know, he was literally a choir boy under the sentencing evidence here, no prior juvenile adjudications, no gang membership, active in school both before and after incarceration. If this court does not provide relief under the first issue, we ask for either a new sentencing hearing under the Eighth Amendment or Proportionate Penalties Clause of the Illinois Constitution or for this court to reduce his excessive sentence to the minimum allowed, which is 26 years. Okay, well, thank you very much. You've given us a very interesting case, and the arguments were very good. We want to tell you that, and we'll have a decision for you very shortly.